1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | EARL DAVIS SR.,                          | Case No.  1:22-cv-01632-JLT-HBK (PC)

12 |              Plaintiff,                   | ORDER CONSTRUING PLEADING AS
   |                                           | REPLY AND DIECTING CLERK TO
13 |       v.                                 | TERMINATE IT AS PENDING MOTION

14 | E. CLOAK, S. REED, and R. VINCENT,        | (Doc. No. 50)

15 |              Defendants.                  | FINDINGS AND RECOMMENDATIONS TO
   |                                           | DENY PLAINTIFF'S MOTIONS FOR
16 |                                           | INJUNCTIVE RELIEF

17

18                                              (Doc. Nos.  36, 39, 48)

19                                              FOURTEEN-DAY OBJECTION PERIOD

20          Plaintiff Earl Davis Sr. initiated this action as a state prisoner proceeding and is

21 proceeding on his First Amended Complaint ("FAC") alleging First Amendment claims for

22 retaliation and interference with mail against Defendants E. Cloak. S. Reed, and R. Vincent.

23 (Doc. No. 26).  On August 7, 2023, August 28, 2023, and September 28, 2023, respectively,

24 Plaintiff filed motions seeking various forms of injunctive relief.   (Doc. Nos. 36, 39, 48).  On

25 September 38, 2023 and October 10, 2023, Defendants filed oppositions to Plaintiff's August 28,

26 2023 motion and September 28, 2023 motion, respectively.  (Doc. Nos. 47, 51).  On October 5,

27 2023, Plaintiff filed another pleading titled Preliminary Injunction."  (Doc. No. 50).  The pleading

28 generally responds to Defendants' opposition to Plaintiff's August 28, 2023 motion.  Thus, as

more fully discussed below, the Court construes the pleading as a reply in support of his motion.[1] For the reasons discussed below, the undersigned recommends that the district court deny Plaintiff's motions.

## I. BACKGROUND AND ALLEGED FACTS

### 1. Allegations in FAC

On June 6, 2023, the Court screened Plaintiff's FAC and found it alleged cognizable First Amendment retaliation and interference with mail claims against Defendants E. Cloak, S. Reed, and R. Vincent only. (Doc. Nos. 14, 26). On July 24, 2023, Plaintiff voluntarily dismissed the remaining Defendants and claims deemed not cognizable in the FAC. (Doc. No. 30). On July 27, 2023, the Court ordered the FAC served on Defendants Cloak, Reed, and Vincent. (Doc. No. 31). The Court granted Defendants an extension of time until October 30, 2023 to file a response the FAC. (Doc. No. 46).

The gravamen of Plaintiff's FAC is that these three prison officials at Sierra Conservation Center ("SCC") improperly read Plaintiff's legal mail and various supervisors failed to prevent it. (Doc. No. 14 at 3, 5-9). After Plaintiff filed a grievance and this civil rights action, the same officials retaliated against Plaintiff by denying him access to his regular incoming mail and charging him excessive postage to send outgoing mail.[2] (*See generally id*.).

### 2. Motion for Restraining Order (Doc. No. 36)

On August 7, 2023, Plaintiff filed a pleading titled "Restraining Order" which the Court construes as a Motion for Temporary Restraining Order (TRO). (Doc. No. 36). In it, Plaintiff seeks a "restraining order" against Defendants Cloak, Reed, and Vincent to "prevent [Defendants] from having any dealings with my mail" and "made to keep a distance." (*Id*. at 2). When he filed the TRO Plaintiff was due to be transferred back to SCC. (*Id*. at 1). Plaintiff's most recent Notice of Change of Address, entered on September 28, 2023, reflects that he no longer is

---

[1] A motion's "nomenclature is not controlling." *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) (*quoting Sea Ranch Ass'n v. Cal. Coastal Zone Conservation Comm'ns*, 537 F.2d 1058, 1061 (9th Cir. 1976)). Instead, we "construe [the motion], however styled, to be the type proper for the relief requested." *Id*.

[2] The FAC alleged several other forms of retaliation, but the Court found those acts did not state cognizable retaliation claims. (*See* Doc. No. 26 at 11-14).

1    confined at SCC due to his transfer to Salt Creek Conservation Camp.  (*See* Doc. No. 49).

2          In the Motion, Plaintiff expresses his concern that Defendants may somehow interfere

3    with his eligibility for "camp" and thereby change his parole date, which has been delayed

4    multiple times.  (*Id*. at 2).  Plaintiff states that his wife has suffered facial paralysis due to the

5    stress of his parole date repeatedly being moved and implores the Court to intervene to prevent it

6    from happening again.  (*Id*.).

7          **3. First Motion for Preliminary Injunction (Doc. No. 39)**

8          On August 28, 2023, Plaintiff filed a pleading titled "Preliminary Injunction. Asking the

9    Court to Order CDCR Return Plaintiff (Davis, Earl Sr.) to his Parole Date Prior to 1983 Filed

10   12/22/2023 in which Plaintiff Should Have Paroled 6/30/2023 Due to Retaliation of CDCR This

11   Constitutional Right Has been Disregaurded [sic] Intetionaly [sic]."  (Doc. No. 39, "First PI

12   Motion").  The Court construes the pleading as a Motion for Preliminary Injunction.

13         In it, Plaintiff asks the Court to restore him to work group F for the time period of

14   February 20,2023 to the present and to order his release from CDCR custody.  (*See id*.)  Plaintiff

15   alleges that chief physician Steve Smith wrongly classified him as medically unable to perform

16   fire camp duties, which removed him work group F and delayed his parole date.  (*Id*. at 3-4).

17   Plaintiff's wife suffered medical problems as a result of the stress.  (*Id*. at 2).  The error regarding

18   Plaintiff's medical status was later corrected and Plaintiff was cleared for firefighting duties, but

19   his parole date was not restored.  (*Id*.).  Plaintiff now asks the Court to change his work group

20   classification and restore his prior parole date.  (*Id*. at 4).  Plaintiff attaches to the First PI Motion

21   two Medical Classification Chronos, excerpts of an unidentified committee report, and a

22   calculation worksheet for Plaintiff's parole date.  (*Id*. at 6-12).

23         On September 21, 2023, Defendants Cloak, Reed, and Vincent filed an Opposition to the

24   First PI Motion.  (Doc. No. 47).  In it, Defendants argue that Plaintiff's First PI Motion is

25   procedurally deficient; seeks relief against unidentified parties over whom the Court does not

26   have jurisdiction; seeks relief unrelated to his underlying claims; and fails to allege facts

27   satisfying the four-factor preliminary injunction analysis.  (*See generally id*.).

28         On October 5, 2023, Plaintiff filed his construed reply in support of his First PI Motion.

(Doc. No. 50).  In it, Plaintiff asks the Court to excuse the deficiencies in Plaintiff's Motion because he is not a trained lawyer.  (*Id*. at 1).  He asserts that, contrary to Defendants' claim, the Motion is related to the underlying claims in the FAC because when he filed a grievance regarding the delay in his parole date, the officer who denied the grievance was R. Vincent, who is a Defendant in this case.  (*Id*. at 1-2).  Plaintiff contends this is further evidence of retaliation by Defendant Vincent.  (*Id*. at 2).  Plaintiff urges the Court to prevent Vincent and others from further delaying his parole date out of retaliation.  (*Id*. at 2-3).

**4. Second Motion for Preliminary Injunction** (Doc. No. 48)

On September 28, 2023, Plaintiff filed a pleading titled "Preliminary Injunction Requesting Council (Defendant) Office to File an Immediate Invistigation [sic] For Retaliation Holding Me Over Three Months Past My Parole Date. And Order A[n] Immediate Release." (Doc. No. 48, "Second PI Motion").  The Court construes Plaintiff's pleading as a Motion for Preliminary Injunction.  In it, Plaintiff asks the Court to order the Attorney General's Office to investigate Sierra Conservation Center over the alleged retaliatory acts against Plaintiff.  (*Id*. at 1).  Plaintiff asserts that Warden Steve Smith of SCC filed a fraudulent document claiming to be the "chief practitioner" in which he found Plaintiff tested positive for "U/A" which resulted in Plaintiff being disqualified for work group 4.  (*Id*. at 2).  As a result, Plaintiff's parole date was changed, which caused Plaintiff's wife to suffer Bell's Palsy.  (*Id*.).  Plaintiff attaches to the Motion a medical classification chrono and a parole date calculation worksheet.  (*Id*. at 5-8).

On October 10, 2023, Defendants Cloak, Reed, and Vincent filed an Opposition to the Second PI Motion.  (Doc. No. 51).  In it, Defendants argue that the Second PI Motion is procedurally deficient; seeks relief against unidentified parties over whom the Court does not have jurisdiction; seeks relief unrelated to his underlying claims; and fails to allege facts satisfying the four-factor preliminary injunction analysis.  (*See generally id*.).

## II.  APPLICABLE LAW

Because the Court construes Plaintiff's three motions as requests for injunctive relief, the Court recites the standards governing preliminary injunctions.  The primary purpose of a preliminary injunction is preservation of the status quo.  *See, e.g., Ramos v. Wolf*, 975 F.3d 872,

4

887 (9th Cir. 2020).  More specifically, the purpose of a preliminary injunction is preservation of the Court's power to render a meaningful decision after a trial on the merits.  *See, e.g., Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Barth v. Montejo*, 2021 WL 1291962, at *1 (E.D. Cal. Apr. 7, 2021).  It is meant to maintain the relative positions of the parties and prevent irreparable loss of rights before a trial and final judgment.  *See, e.g., Camenisch*, 451 U.S. at 395; *Ramos*, 975 F.3d at 887; *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020).  A preliminary injunction may assume two forms.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 878 (9th Cir. 2009).  Prohibitory injunctions prevent a party from acting, thus maintaining the status quo.  *Id*.  A mandatory injunction directs some responsible party to act.  *Id*. at 879.

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established.  To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (*citing Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20–22 (2008)); *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  To the extent prior Ninth Circuit cases suggest a lesser standard by focusing solely on the possibility of irreparable harm, such cases are "no longer controlling, or even viable."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see Stormans*, 586 F.3d at 1127; *Cottrell*, 632 F.3d at 1131.  Under *Winter*, the proper test requires a party to demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public interest.  *See, e.g., Winter*, 555 U.S. at 20; *Stormans*, 586 F.3d at 1127; *Cottrell*, 632 F.3d at 1131.

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions, with the exception that preliminary injunctions require notice to the adverse party.  *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a).  Eastern District of California Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most

1   extraordinary of circumstances," and the court considers whether the applicant could have sought

2   relief by motion for preliminary injunction at an earlier date.  Local Rule 231(a)-(b) (E.D. Cal.

3   2019).  A temporary restraining order "should be restricted to serving [its] underlying purpose of

4   preserving the status quo and preventing irreparable harm just so long as is necessary to hold a

5   hearing, and no longer."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*

6   *Local No. 70*, 415 U.S. 423, 439 (1974).

7          A preliminary injunction is an extraordinary remedy that is not awarded as of right.

8   *Winter*, 555 U.S. at 24; *Cottrell*, 632 F.3d at 1131.  The burden to achieve injunctive relief is

9   particularly high when a party seeks a mandatory injunction.  *See Garcia v. Google, Inc*., 786

10   F.3d 733, 740 (9th Cir. 2015).  Mandatory injunctions go beyond an injunction preventing a party

11   from acting, and thus beyond mere maintenance of the status quo.  *See id*.  They require a party to

12   act.  *Id*.  District courts must deny requests for mandatory injunctions unless the law and facts

13   clearly favor a moving party.  *Id*.  The Court will not grant such requests in doubtful cases.  *Id*.

14   *Driver v. Gibson*, 2021 WL 1811995, at *1–2 (E.D. Cal. May 6, 2021), *report and*

15   *recommendation adopted*, 2021 WL 3630386 (E.D. Cal. Aug. 17, 2021)

16          Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and

17   requires that a motion for temporary restraining order include "specific facts in an affidavit or a

18   verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will

19   result to the movant before the adverse party can be heard in opposition," as well as written

20   certification from the movant's attorney stating "any efforts made to give notice and the reasons

21   why it should not be required."  Fed. R. Civ. P. 65(b).

22          Temporary restraining orders are governed by the same standard applicable to preliminary

23   injunctions, with the exception that preliminary injunctions require notice to the adverse party.

24   *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126

25   (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a).  Eastern District of California Local Rule 231,

26   however, requires notice for temporary restraining orders as well, "[e]xcept in the most

27   extraordinary of circumstances," and the court considers whether the applicant could have sought

28   relief by motion for preliminary injunction at an earlier date.  Local Rule 231(a)-(b) (E.D. Cal.

2019).  A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A temporary restraining order is "an extraordinary remedy" and may be issued only if Plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  Plaintiff bears the burden of clearly satisfying all four prongs.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A TRO will not issue if Plaintiff merely shows irreparable harm is possible – a showing of likelihood is required.  *Id.* at 1131.  The Ninth Circuit also has a second test, holding that a party requesting relief is entitled to a preliminary injunction if it demonstrates: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.  *Zepeda v. U.S. Immigr. & Naturalization Serv*, 753 F.2d 719, 727 (9th Cir. 1985); *see also McKinney v. Hill*, 925 F.2d at 1470 (9th Cir. 1991) (noting same).  However, as applicable here, a federal court does not have personal jurisdiction over the parties and subject matter jurisdiction over the claim if no defendant has been served in the action.  *Zepeda*, 753 F.2d at 727 (9th Cir. 1985) (if no defendant has been served with process then injunctive relief is premature).

Further, the injunctive relief an applicant requests must relate to the claims brought in the complaint.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").  Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff any relief.  *Id.* at 636.

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials.  In such cases,

7

1  "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to

2  correct the harm the court finds requires preliminary relief, and be the least intrusive means

3  necessary to correct that harm."  18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr*.,

4  2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016).  As the Ninth Circuit has observed, the PLRA

5  places significant limits upon a court's power to grant preliminary injunctive relief to inmates,

6  and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the

7  bargaining power of prison administrators—no longer may courts grant or approve relief that

8  binds prison administrators to do more than the constitutional minimum."  *Gilmore v. People of*

9  *the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).  The court's jurisdiction is "limited

10  to the parties in this action" and the pendency of an action "does not give the Court jurisdiction

11  over prison officials in general or over the conditions of an inmate's confinement unrelated to the

12  claims before it."  *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020).

### III.  DISCUSSION

14        Having reviewed Plaintiff's three Motions, the undersigned does not find Plaintiff has

15  satisfied his burden, in any of the Motions, to warrant issuance of this extraordinary remedy.  As

16  a threshold matter, Plaintiff has not complied with Local Rule 231(d).  There is no showing of

17  actual or attempted notice; and, other than requesting the relief, Plaintiff fails to provide any

18  briefing, other than conclusory statements, on the implicated legal issues.  Nor does Plaintiff

19  provide any affidavits attesting to imminent irreparable harm, aside from conclusory allegations.

20  Thus, the Motions are facially deficient.

21        1.  Plaintiff's Two Motions for Preliminary Injunction

22        Further, in his two Motions for Preliminary Injunction Plaintiff effectively seeks a

23  mandatory injunction directing that prison officials release him from what he views as unlawful

24  incarceration.  (*See generally* Doc Nos. 39, 48).  Plaintiff cannot obtain a preliminary injunction

25  compelling his release from incarceration in this action brought under 42 U.S.C. § 1983.

26        Section 1983 provides a remedy for the violation of constitutional rights by any person

27  acting under color of state law.  42 U.S.C. § 1983; *see, e.g., Hall v. City of Los Angeles*, 697 F.3d

28  1059, 1068 (9th Cir. 2012); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Section 1983 is not a vehicle for challenging the validity of confinement.  *See, e.g., Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011) (*citing Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016).  Complaints for relief turning on the circumstances of a prisoner's confinement may be brought in a § 1983 action.  *See Skinner*, 562 U.S. at 533–34; *Nettles*, 830 F.3d at 927.  Instead, the exclusive remedy for a prisoner seeking immediate or speedier release from confinement is a writ of habeas corpus.  *Nettles*, 830 F.3d at 927; *see Skinner*, 562 U.S. at 533–34; *Heck v. Humphrey*, 512 U.S. 477, 481–87 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus").  Because a habeas petition is the exclusive method by which a prisoner may seek release from custody, a temporary restraining order or injunction ordering a prisoner's release in a civil rights action is inappropriate.  *See, e.g., Nettles*, 830 F.3d at 927; *Henson v. Corizon Health*, 2020 WL 2319937, at *2 (D. Ariz. May 11, 2020).  If Plaintiff wishes to challenge the fact or duration of his continued confinement, he must file a petition for a writ of habeas corpus.

2.  <u>Plaintiff's Motion for TRO</u>

As to Plaintiff's request for a Temporary Restraining Order against Defendants Eaton, Reed, and Vincent, the undersigned recommends the Court decline to grant the extraordinary relief requested by Plaintiff for several reasons.  First, "[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin."  *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017) (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  "Thus, a claim for injunctive relief becomes moot once subsequent events have made clear the conduct alleged as the basis for the requested relief 'could not reasonably be expected to recur.'"  *Bayer*, 861 F.3d at 864 (quoting *Ruiz v. City of*

1  *Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998)).

2      Because Plaintiff is no longer incarcerated at SCC, nor has he demonstrated a "reasonable

3  expectation of returning to [the prison]" *Valasquez v. Diaz*, 2021 WL 3911309, at *3 (E.D. Cal.

4  Sept. 1, 2021) (quoting *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam)),

5  injunctive relief is no longer warranted.  Given that Plaintiff is now incarcerated in Salt Creek

6  Conservation Camp, the undersigned finds there is no basis to grant him injunctive relief for harm

7  he alleges will take place at SCC.  *Cuellar v. Madera Cnty. Dep't of Corr.*, 2021 WL 3077370, at

8  *2 (E.D. Cal. July 21, 2021).

9      Finally, the undersigned finds Plaintiff does not set forth facts showing that he is likely to

10  suffer imminent and irreparable harm if the TRO is not granted.  The Motion alleges that

11  unnamed prison officials changed his parole date.  (*See* Doc. No. 36).  When Plaintiff filed a

12  grievance regarding the issue, Defendant Vincent allegedly denied his grievance.  (Doc. No. 50 at

13  1-2).[3]  Plaintiff does not allege that Defendant Vincent or the other two Defendants were

14  responsible for the initial modification of his parole date, nor that any of the Defendants

15  prevented Plaintiff from appealing the initial denial of his grievance.  (*See* Doc. No. 36).  At best,

16  Plaintiff alleges that further harm is *possible* if the Court does not act to restrain Defendants from

17  denying his grievances.  However, to grant a TRO the Court must find that imminent, irreparable

18  harm is likely in the absence of a Court order.  *Am. Trucking Ass'ns, Inc.*, 559 F.3d at 1052; *see*

19  *Stormans*, 586 F.3d at 1127; *Cottrell*, 632 F.3d at 1131.  The mere fact that Defendant Vincent

20  denied Plaintiff's grievance is insufficient to support such a claim.  Moreover, the fact that

21  Plaintiff has been transferred to another facility makes the assertion that he faces irreparable

22  injury from prison officials at SCC even more implausible.

23      In summary, the undersigned finds this case does not involve extraordinary circumstances

24  warranting the issuance of a temporary restraining order or preliminary injunction and

25  recommends for all the reasons set forth above that the district court deny Plaintiff's motions for a

26

27  [3] Although this fact concerning Defendant Vincent is not alleged within his TRO Motion, the Court
liberally construes Plaintiff's pleadings and garners relevant facts from his subsequent filing.  *See Yong*

28  *Lor v. Asuncion*, 2018 WL 6177228, at *1 (C.D. Cal. Aug. 21, 2018).

temporary restraining order and for a preliminary injunction.

ACCORDINGLY, it is **ORDERED**:

The Court construes Plaintiff's October 5, 2023, pleading titled "Preliminary Injunction." (Doc. No. 50) as a reply in support of his First PI Motion and directs the Clerk of Court to term it as a pending motion.

IT IS FURTHER **RECOMMENDED**:

1.      Plaintiff's construed motion for a temporary restraining order (Doc. No. 36) be DENIED.

2.      Plaintiff's construed motions for a preliminary injunction (Doc. No. 39, 48) be DENIED.

<u>NOTICE TO PARTIES</u>

These findings and recommendations will be submitted to the United States District Judge assigned to the case under the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    October 31, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11